**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE HERTZ CORPORATION, | : | |
| | : | Case No. 19 Civ. 3508 (WHP) |
| Plaintiff/Counterclaim-Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| ACCENTURE LLP, | : | |
| | : | |
| Defendant/Counterclaim-Plaintiff. | : | November 27, 2019 |
| | : | |

**ACCENTURE LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL INTERNATIONAL BUSINESS MACHINES CORPORATION TO COMPLY WITH ACCENTURE LLP'S SUBPOENA**

Defendant/Counterclaim-Plaintiff Accenture LLP ("Accenture") respectfully submits this Memorandum of Law in support of its motion pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure for an order directing non-party International Business Machines Corporation ("IBM") to comply with Accenture's subpoena dated August 12, 2019.[1]

## PRELIMINARY STATEMENT

The Hertz Corporation ("Hertz") is "one of the world's largest and most familiar vehicle rental companies." (First Corrected Am. Compl. ¶ 1, ECF No. 26 ("AC" or "Amended Complaint").) Hertz retained Accenture, a leading global technology services provider, to assist it in redesigning and remaking its customer-facing website and mobile applications (the "Project"). Accenture assisted Hertz on this Project from 2016 until the end of June 2018. At that time, according to Hertz, it retained IBM to take over the Project under Hertz's supervision.

IBM is a central player in this case. At Hertz's request, IBM performed and delivered an assessment of Accenture's work on the Project, which appears to be the basis for many of Hertz's claims in this case. (*E.g.*, Amended Complaint ¶¶ 1–13, 22–65, 69–79.) Hertz appears to have accepted IBM's critique of Accenture's work. Thereafter, Hertz alleges it "worked hand-in-hand" with IBM "to develop the world-class digital experience that Accenture promised but failed to deliver." (*Id.* ¶¶ 14–15, 67, 80.) Hertz seeks as damages the fees it paid IBM allegedly to remediate Accenture's work. (*Id.*) Thus, IBM's role on the Project, both before and after Hertz decided to replace Accenture, is at the heart of Hertz's claims in this case.

On August 12, 2019, Accenture served a subpoena for documents and deposition testimony on IBM (the "Subpoena"). The Subpoena was narrowly tailored to focus on IBM's

---

[1] Pursuant to Federal Rule of Civil Procedure 37(a)(1), counsel for Accenture certifies that they have conferred with counsel for IBM in a good-faith effort to resolve the issues raised herein but were unable to do so.

work on the Project. Accenture and IBM have conferred multiple times over several months in order to avoid having to raise any dispute with the Court. In the course of those discussions, IBM has given ever-shifting promises as to when its production will be completed. IBM first claimed its production would be complete by the end of September, then by mid-November, and then the end of November. November has now come and gone, without IBM having produced *any* documents from its custodians. IBM now says that it will *begin* producing significant quantities of documents only in mid-December, and it is unable to provide even an estimated date when it will complete its production.

Accenture has diligently and repeatedly engaged with IBM to try to obtain timely production and avoid having to burden the Court with this dispute. Despite Accenture's best efforts, it is clear that IBM will not produce responsive material in a timely manner unless ordered by the Court to do so. Accenture thus seeks an order compelling IBM to complete its production of documents responsive to the Subpoena by no later than December 31, 2019.[2]

## BACKGROUND

### A. IBM's Key Role in This Litigation

IBM's significance in this case is undisputed. As Hertz alleges, IBM "worked hand-in-hand" with Hertz on the Project and was directly involved in Hertz's decision to direct Accenture to stop working on the Project. (Amended Complaint ¶ 67). IBM has played a large role in helping Hertz develop its new websites and mobile apps, both before and after Accenture

---

[2] IBM has indicated that the volume of its expected production will be large—hundreds of thousands of documents. (Declaration of Sapna W. Palla in Support of Accenture LLP's Motion to Compel International Business Machines Corporation to Comply with Accenture LLP's Subpoena dated November 27, 2019 ("Palla Decl.") ¶ 23.) Given this expected volume, even if IBM were to fully complete its production by December 31, it would still be exceedingly difficult for Accenture to review IBM's voluminous production and use those documents in depositions of Hertz's and IBM's witnesses under the current schedule.

stopped work on the Project. The fees IBM received for these services appear to constitute a significant part of the damages sought by Hertz. Given this, IBM indisputably possesses information and witnesses critical to the central issues in this case. Unsurprisingly, IBM itself agrees that it is "key" to this litigation. (Palla Decl. ¶¶ 13, 22, Exs. I at 1, O at 1.)

      **B.**    **Accenture's Subpoena is narrowly tailored to IBM's role on the project.**

Accenture served the Subpoena more than three months ago. (*Id.* Ex. A.) The Subpoena seeks discovery concerning IBM's role on the Project with respect to the following general topics: (1) IBM's pitch to Hertz for the Project; (2) IBM's contracts and statements of work with Hertz for the Project; (3) IBM's assessment of Accenture's work on the Project; (4) IBM's work on the Project both before and after Accenture stopped work; and (5) Hertz's payments to IBM for its work on the Project. (*Id.*) IBM's formal objections, served in September 2019, made no objection to the majority of Accenture's requests for production. (*Id.* ¶ 4, Ex. C.) In subsequent meet and confers and written communications, Accenture and IBM resolved any disputes regarding the scope of the Subpoena, and IBM agreed to apply a set of search terms to the files of 24 custodians with key roles on the Project. (*Id.* ¶¶ 14, 15, 18, 23.) Accordingly, consistent with its central role on the Project, IBM has agreed to search for and produce documents responsive to the Subpoena.[3]

      **C.**    **IBM's Refusal to Timely Comply with the Subpoena**

IBM has failed to produce the agreed-upon documents in a timely fashion. Instead, as illustrated by the chronology below, IBM has offered an ever-shifting series of unfulfilled promises about when it would begin and complete its document production:

---

[3] IBM also separately objected to producing the source code for the Project. Hertz has produced certain source code already and has represented that it will produce additional source code for the new website once it is launched. Accenture reserves its rights to seek source code from IBM in the event that Hertz's production is incomplete.

- On August 23 and 27, IBM represented that it would make a substantial production on September 13 and complete its production of relevant documents by September 23. (*Id.* ¶ 3, Ex. B.)

- On September 12, IBM informed Accenture that it needed an extension until September 19 to begin production but would still complete production by September 23. (*Id.* ¶ 5, Exs. D, E.)

- On September 20, IBM said that it would not be able to produce responsive documents on September 23. IBM represented that its production would be complete on September 24. (*Id.* ¶ 6, Ex. F.)

- When Accenture did not receive any documents on September 24, IBM represented that it needed another week to complete its production. (*Id.* ¶ 7, Ex. G.)

- During subsequent meet and confers on September 27 and October 2, it became apparent that contrary to its representations, IBM had not even meaningfully begun to identify responsive material. (*Id.* ¶¶ 8–9.)

- During a September 27 meet and confer, IBM was unable to provide even the most basic information about its process to collect, review, and produce responsive documents. IBM could not provide the names of any custodians whose files were being searched. It could not provide any information about how documents were being collected from custodians or what search terms IBM was using to identify responsive documents. (*Id.* ¶ 8.) And it could provide no estimate of the anticipated volume of its production. (*Id.*)

- During a subsequent meet and confer on October 2, IBM further confirmed its unwillingness to timely comply with the Subpoena. IBM informed Accenture that it (1) had not yet identified the relevant custodians from which it would be collecting documents, much less completed or substantially begun its collection of documents from those custodians; (2) had not yet developed any search terms to identify responsive material from the relevant custodians and document repositories; (3) had not identified all the collaborative workspaces that contained information responsive to the Subpoena; and (4) had failed to secure adequate resources to ensure timely review and production of documents. (*Id.* ¶ 9.)

- On October 4, given IBM's apparent inability to develop search terms to use on its own documents, Accenture provided IBM with proposed search terms. (*Id.* ¶ 11, Ex. H.) That same day, IBM made a production of 11 documents, which had apparently been collected on an ad hoc basis. (*Id.* ¶ 12.)

- As of October 23, IBM still had not produced any additional documents. IBM stated during a meet and confer that day that it would not in fact be imminently completing its document production. Instead, it represented that it would produce documents from 6–8 custodians by November 1 and would complete productions for the remaining custodians and two IBM databases by mid-November. (*Id.* ¶ 19.)

4

- On October 25, IBM produced another small set of documents, 35 in all, many of which were improperly redacted. (*Id.* ¶ 20.)

- On November 1, IBM said that it would not be able to meet the dates promised on October 23, including completion of production by mid-November. It claimed that it would instead provide documents from four custodians by November 8 and finish production of all documents by the end of November. (*Id.* ¶ 23.)

- Having received no documents from a single agreed custodian by November 11, Accenture again asked IBM to address the status of its production and asked for a meet and confer. (*Id.* ¶ 24.)

- On a meet and confer on November 13, IBM said it would not meet its latest promised dates either. (*Id.* ¶ 25.) Incredibly, IBM now admitted that it would not even begin to produce documents from any of its custodians until December 16—more than three months after the date IBM initially said it would *complete* document production.[4] (*Id.*) IBM was also unable to provide a date when its document production would be complete. (*Id.*)

As reviewed above, more than three months after the Subpoena was served, IBM has yet to produce a single document from the files of any of the agreed custodians. Instead, it has produced only a few dozen documents from its files and has provided limited access to one IBM database containing a small number of relevant communications. (*Id.* ¶¶ 12, 20, 26.) It will not even begin meaningful document productions from the agreed custodians until mid-December at the earliest, and it cannot provide even an estimated date when its production will be complete. Given this history of missed deadlines, delays, and excuses, Accenture has no confidence that IBM's latest vague promises are any more reliable than the countless missed deadlines IBM has provided to date.

---

[4] Although IBM again vaguely promised some rolling productions from "two to three" of the agreed custodians starting November 18, unsurprisingly it failed to meet this date either. (*Id.* ¶ 27.)

5

## ARGUMENT

Parties are entitled to obtain discovery from third parties of "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Application of Dow Jones & Co. Inc.,* No. 98 MISC. 8-85 (PKL), 1998 WL 883299, at *6 (S.D.N.Y. Dec. 17, 1998). It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1). *See Schwartz v. New York City Off–Track Betting Corp.*, No. 92 Civ. 1166 (KMW), 1993 WL 42760, at *3 (S.D.N.Y. Feb. 11, 1993); *Wertheim Schroder & Co. Inc. v. Avon Prods., Inc.*, No. 91 CIV. 2287 (PKL), 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995); *During v. City Univ. of New York*, No. 05 CIV. 6992(RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 45 provides that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Further, "even if a nonparty is . . . entitled to some enhanced protection" the protection is less robust when the nonparty is "closely allied" with the non-requesting party and the "information it possess[es] is . . . pertinent[.]" *Schwartz*, 1993 WL 42760, at *3.

There can be no dispute that IBM has failed to comply with the Subpoena in a timely manner. Although the parties have no live disputes over the scope of the Subpoena, IBM has yet to meaningfully begin its document production, more than three months after the Subpoena was served. IBM still has yet to produce a single document from the files of the agreed custodians and has no apparent or realistic plan for timely compliance with the Subpoena. At best, IBM will not complete its document production until well into 2020, and given its history of unfulfilled promises, Accenture has no confidence that even that timeline is realistic.

IBM's failure to timely comply with the Subpoena continues to greatly prejudice Accenture. The current fact discovery deadline in this case of February 13, 2020, is fast approaching. Accenture needs sufficient time before the fact discovery deadline to review IBM's production, identify and address with IBM any deficiencies in the production, and raise and resolve any discovery disputes with the Court. Accenture then must complete depositions of Hertz's and IBM's witnesses based on what it learns from these documents. Even if IBM were to comply with the Subpoena today, the expected volume of IBM's production—hundreds of thousands of documents—makes these tasks very difficult to complete under the current schedule. They are all the more difficult when IBM will not even substantially start its production until mid-December and not complete it until (at best) well into 2020. Given IBM's critical role on the Project and anticipated voluminous production, Accenture can no longer rely on IBM to produce its electronic documents in a timely manner and requires the Court to set a firm deadline. Accordingly, Accenture respectfully requests that the Court direct IBM to complete its electronic document production by December 31, 2019.[5]

IBM's role as a nominal third party is no excuse for IBM's delays. IBM concedes that Hertz has placed IBM and its documents at the center of this suit. And IBM is no ordinary third party. IBM has closely coordinated with Hertz on this litigation, even inserting itself into the litigation by reviewing documents produced by Hertz and asserting confidentiality designations

---

[5] Accenture expects that the parties will shortly file a joint letter requesting an extension of the current discovery deadlines based in part on IBM's delays in producing agreed-upon documents. No matter the fact discovery deadline, Accenture asks the Court to impose a date certain by which IBM will complete its production, because IBM's conduct to date establishes that it is not capable of meeting whatever promised deadline it sets for itself. Moreover, as Accenture expects will be discussed further in the parties' anticipated joint letter, IBM's history of delays to date has already made the current schedule infeasible, requiring an extension regardless of any deadline imposed on IBM to produce its documents.

on behalf of Hertz. (*See* ECF No. 51.) IBM should be ordered to produce all responsive documents by December 31, 2019.

## CONCLUSION

For the foregoing reasons, Accenture respectfully submits that the Court grant its motion to compel IBM to complete its production of documents responsive to the Subpoena no later than December 31, 2019.

Dated: November 27, 2019

>  Respectfully submitted,
>
> **ACCENTURE LLP**
>
> By: */s/ James H. Bicks*
> James H. Bicks (JB2930)
> Benjamin H. Diessel (BD4711)
> Sapna W. Palla (SP9009)
> Kim E. Rinehart (admitted pro hac vice)
> David R. Roth (admitted pro hac vice)
> Wiggin and Dana LLP
> 437 Madison Avenue, 35th Floor
> New York, New York 10022
> Phone: 203.363.7622
> Fax: 212.551.2888
> jbicks@wiggin.com
> bdiessel@wiggin.com
> spalla@wiggin.com
> krinehart@wiggin.com
> droth@wiggin.com
>
> *Attorneys for Defendant/Counterclaim-Plaintiff Accenture LLP*