**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE HERTZ CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-3508-WHP |
| ACCENTURE LLP, | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## THE HERTZ CORPORATION'S ANSWER TO ACCENTURE'S COUNTERCLAIMS

The Hertz Corporation ("Hertz" or the "Plaintiff") hereby responds to Defendant Accenture LLP's ("Accenture" or "Defendant") Counterclaims (the "Counterclaims"). Hertz does not respond to the headers in Accenture's Counterclaims. The use of the headers of the Counterclaims in this Answer is done solely for convenience, and in no way constitutes an admission of any allegation contained in such headers. With respect to each of the individually numbered paragraphs of the Counterclaims, Hertz answers as follows.

**ANSWER TO COUNTERCLAIMS**

1.     Paragraph 1 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required. To the extent that any response is required, Hertz admits that it engaged Accenture to design, build, test, and deploy Hertz's new website and mobile applications (or "apps"). Hertz denies any remaining allegations set forth in Paragraph 1.

2.     Paragraph 2 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required. To the extent that any response is required, Hertz admits that, in early 2016, it began a project to transform and redefine the customer experience on Hertz's digital platforms (the "Project"), which included redeveloping its digital platforms

and performing an extensive end-to-end technology upgrade.  Hertz denies any remaining allegations set forth in Paragraph 2.

3.     Paragraph 3 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required.  To the extent that Paragraph 3 of the Counterclaims purports to paraphrase or characterize documents, those documents speak for themselves, and Hertz denies Accenture's characterization of those documents.  Further answering, Hertz admits that it completed parts of the digital re-design itself and hired other vendors to perform other parts of the digital re-design.  Hertz denies any remaining allegations set forth in Paragraph 3.

4.     Hertz denies the allegations set forth in Paragraph 4 of the Counterclaims except to admit that Hertz, as well as third party vendors, worked on some aspects of the Project.

5.     Hertz denies the allegations set forth in Paragraph 5 of the Counterclaims.

6.     To the extent that Paragraph 6 of the Counterclaims purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Hertz denies any characterization of those documents contained in Paragraph 6.  Hertz denies any remaining allegations set forth in Paragraph 6.

7.     To the extent that Paragraph 7 of the Counterclaims purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Hertz denies any characterization of those documents contained in Paragraph 7.  Further answering, Hertz admits that it entered into Change Request 1 with Accenture.  Hertz denies the remaining allegations in Paragraph 7.

8.      Hertz admits that "in May 2018, Hertz asked Accenture to stop working on the Project and to transition all of its work on the project to Hertz by the end of June.  Hertz denies the remaining allegations set forth in Paragraph 8 of the Counterclaims.

9.      To the extent that Paragraph 9 of the Counterclaims purports to quote, paraphrase, or characterize a document, that document speaks for itself, and Hertz denies any characterization of that document contained in Paragraph 9.  Further answering, Hertz admits that it entered into Change Request 2 with Accenture and that it paid Accenture for outstanding invoices incurred under Change Request 1.  Hertz denies the remaining allegations in Paragraph 9.

10.     Paragraph 10 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required.  Further answering, Hertz admits that it retained IBM to assess the work delivered by Accenture, and Hertz admits that IBM identified various deficiencies in Accenture's work.  Hertz also admits that it entered into Change Request 2 with Accenture and that it paid Accenture for certain invoices incurred under Change Request 1.  Hertz denies the remaining allegations in Paragraph 10.

11.     Hertz admits that after it paid invoices for Change Request 1, Hertz discovered the extent of the defects in Accenture's work and informed Accenture of those defects.  Hertz also admits that it has not paid invoices Accenture submitted under Change Request 2.  Hertz denies the remaining allegations of Paragraph 11.

12.     Hertz denies the allegations set forth in Paragraph 12 of the Counterclaims.

**13.**     Paragraph 13 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required.  Further answering, Hertz denies that it

promised, specifically or otherwise, that it would not bring the claims set out in Hertz's complaint.  Hertz denies the remaining allegations of Paragraph 13.

## JURISDICTION

14.     Hertz admits that the Court has subject matter jurisdiction over Hertz's claims and Accenture's counterclaims.

15.     Hertz admits that, like Accenture, it is subject to personal jurisdiction in this Court with respect to the claims and counterclaims brought in this action.  Hertz denies any remaining allegations in Paragraph 15.

16.     Hertz admits that this Court is a proper venue for this action.  Hertz denies any remaining allegations in Paragraph 16.

17.     Paragraph 17 of the Counterclaims sets forth legal conclusions such that no response is required.

## GENERAL ALLEGATIONS

18.     Hertz admits that it entered into a Consulting Services Agreement (the "CSA") with Accenture in 2004.  Further answering, Hertz states that the parties executed the CSA more than ten years before the Project, and in connection with Hertz's engagement of Accenture to provide services that were very different from those that Hertz engaged Accenture to provide in the course of the Project.  To the extent that Paragraph 18 of the Counterclaims purports to quote, paraphrase, or characterize a document, that document speaks for itself, and Hertz denies any characterization of that document contained in Paragraph 18.     Hertz denies the remaining allegations in Paragraph 18.

19.      To the extent that Paragraph 19 of the Counterclaims purports to quote, paraphrase, or characterize a document, that document speaks for itself, and Hertz denies any

characterization of that document contained in Paragraph 19.  Hertz denies the remaining allegations in Paragraph 19.

20.     Hertz admits that the CSA was executed more than a decade before Hertz undertook the Digital C2C Project that is the subject of this action.  Hertz further admits that the the Digital C2C Project was focused on upgrading Hertz's websites and mobile applications. Hertz denies any remaining allegations set forth in Paragraph 20 of the Counterclaims.

21.     To the extent that Paragraph 21 of the Counterclaims purports to quote, paraphrase, or characterize documents, those documents speaks for themselves, and Hertz denies any characterization of those documents contained in Paragraph 21.  Hertz admits that it engaged Accenture to perform certain services on the Digital C2C Project, and that the overall project was broken into phases, with each phase building on the work of the prior phase.  Hertz further admits that the Phase 1 work began in late summer 2016.  Hertz denies any remaining allegations set forth in Paragraph 21.

22.     Paragraph 22 of the Counterclaims consists of characterizations that are not factual allegations, such that no response is required.  To the extent a further response is required, Hertz denies the remaining allegations of Paragraph 22.

23.     Hertz admits that it entered into a Letter of Intent regarding Phase 2 of the Project with Accenture, and that it later executed a Statement of Work relating to Phase 2. To the extent that Paragraph 23 of the Counterclaims purports to quote, paraphrase, or characterize the Letter of Intent or the Statement of Work, those documents speak for themselves, and Hertz denies the characterizations of those document contained in Paragraph 23.    Hertz denies the remaining allegations in Paragraph 23.

24.     Hertz admits that it engaged certain third-party vendors to provide support.  Hertz denies the remaining allegations in Paragraph 24 of the Counterclaims.

25.     Hertz denies the characterization of the Phase 2 SOW and the other allegations set forth in Paragraph 25.

26.     Hertz denies the allegations set forth in Paragraph 26.

27.     Hertz denies the allegations set forth in Paragraph 27.

28.     Hertz admits that the forecast launch date of the Project was pushed back until April 2018, because of Accenture's delays and failures to perform.  Hertz denies the remaining allegations set forth in Paragraph 28 of the Counterclaims.

29.     Hertz admits that Accenture agreed to write down millions of dollars of fees because of the delays in the Project's forecast launch date and other failures.   Hertz denies the remaining allegations in Paragraph 29.

30.     Hertz denies the allegations set forth in Paragraph 30 of the Counterclaims.

31.     Hertz denies the allegations set forth in Paragraph 31 of the Counterclaims.

32.     Hertz admits that it made the decision to remove Accenture from the Project and engaged other vendors, including IBM, to complete or redo work that Accenture had failed to perform.  Hertz denies the remaining allegations set forth in Paragraph 32.

33.     Hertz admits that it executed Change Request 1 on or about May 31, 2018, but Hertz denies Accenture's characterization of that document.   Hertz denies the remaining allegations in Paragraph 33.

34.     Hertz admits only that Accenture's work on the Project ended on June 28, 2018. Hertz denies the remaining allegations in Paragraph 34 of the Counterclaims.

35.     Hertz admits that IBM assessed the work delivered by Accenture and that IBM identified numerous serious deficiencies in Accenture's work.  Hertz denies the remaining allegations set forth in Paragraph 35.

36.      Hertz admits that it entered into Change Request 2 with Accenture, but denies Accenture's characterization of that document.  Hertz denies the remaining allegations in Paragraph 36.

37.     Hertz admits that it paid the amounts that Accenture invoiced under Change Request 1 but denies the other allegations in Paragraph 37 of the Counterclaims.

38.     Hertz admits that it received invoices from Accenture that were issued under Change Request 2.  Hertz denies the other allegations set forth in Paragraph 38 of the Counterclaims.

39.     Hertz admits that it informed Accenture of numerous defects in Accenture's work and that it has withheld payment of the invoices issued by Accenture.  Hertz denies the other allegations in Paragraph 39 of the Counterclaims.

40.     Hertz admits the allegations set forth in Paragraph 40 of the Counterclaims.

41.     Hertz denies the allegations set forth in Paragraph 41 of the Counterclaims.

## COUNTERCLAIM ONE
## BREACH OF CONTRACT: BREACH OF THE COVENANT NOT TO SUE

42.     Hertz incorporates by reference the preceding paragraphs of this Answer as if set forth fully herein.

43.     Paragraph 43 of the Counterclaims sets forth a legal conclusion such that no response is required.  To the extent that any response is required, Hertz admits that the parties intended Change Request 1 to be a binding agreement.

44.     Hertz denies the allegations set forth in Paragraph 44 of the Counterclaims.

7

45.   Hertz denies that Paragraph 45 fully and accurately quotes or characterizes Change Request 1.  Hertz denies the remaining allegations in Paragraph 45.

46.   Hertz admits that it filed this action on April 19, 2019 but denies that the claims that it has asserted are "Released Claims" under Change Request 1, because the claims in this action are explicitly excluded from the definition of Released Claims.   Hertz denies the remaining allegations of Paragraph 46.

47.   Hertz denies the allegations set forth in Paragraph 47 of the Counterclaims.

48.   Hertz denies the allegations set forth in Paragraph 48 of the Counterclaims.

## COUNTERCLAIM TWO
## BREACH OF CONTRACT: FAILURE TO PAY ACCENTURE'S INVOICES

49.   Hertz incorporates by reference the preceding paragraphs of this Answer as if set forth fully herein.

50.   Paragraph 50 of the Counterclaims sets forth a legal conclusion such that no response is required.  To the extent that any response is required, Hertz admits that the parties intended Change Request 2 to be a binding agreement.

51.   Hertz denies the allegations set forth in Paragraph 51 of the Counterclaims.

52.   Hertz denies the allegations set forth in Paragraph 52 of the Counterclaims.

53.   Hertz denies the allegations set forth in Paragraph 53 of the Counterclaims.

## PRAYER FOR RELIEF

With respect to Paragraphs 54-57 of the Prayer for Relief of the Counterclaims, to the extent these paragraphs make any factual allegations, Hertz denies them.

## DEMAND FOR JURY TRIAL

Accenture has demanded a jury trial, to which no response is required.

## HERTZ'S AFFIRMATIVE DEFENSES

Hertz asserts the following affirmative and other defenses, but does not assume the burden of proof with respect to any issue as to which applicable law places the burden of proof upon Accenture.  Hertz expressly reserves the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or as justice may require.

### FIRST DEFENSE

Accenture fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Accenture's claims are barred by its own material breach of the CSA and the various statements of work and letters of intent issued thereunder.

### THIRD DEFENSE

Accenture's claims are barred, in whole or in part, by the doctrine of waiver.

### FOURTH DEFENSE

Accenture's claims are barred, in whole or in part, for its failure to mitigate its alleged damages.

### FIFTH DEFENSE

Accenture's claims are barred by its own unclean hands because: (i) Accenture continuously breached the CSA and the various statements of work and letters of intent issued thereunder by, for example, failing to properly manage and perform its services as outlined in the CSA and the various statements of work and letters of intent issued thereunder and postponing the go-live date twice; (ii) Hertz relied upon Accenture's claimed expertise in implementing the digital transformation as outlined in the CSA and the various statements of work and letters of intent issued thereunder it; and (iii) Hertz was subsequently injured by this reliance because

9

Hertz paid Accenture more than $32 million in fees and expenses but Accenture never delivered a functional website or apps.

## SIXTH DEFENSE

Accenture's counterclaims are subject to set-off against the amounts owed to Hertz.

## SEVENTH DEFENSE

Accenture seeks to recover damages that are expressly barred and/or limited by the CSA and the various statements of work and letters of intent issued thereunder.

Dated: New York, New York          **BROWN RUDNICK LLP**
      December 27, 2019

By:  /s/ Edward J. Naughton

Edward J. Naughton (*pro hac vice*)
Rebecca M. Lecaroz (*pro hac vice*)
Kyle P. Dorso (*pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
enaughton@brownrudnick.com
rlecaroz@brownrudnick.com
kdorso@brownrudnick.com

-and-

D. Cameron Moxley
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
cmoxley@brownrudnick.com

*Counsel for Plaintiff The Hertz Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2019, I electronically filed The Hertz Corporation's Answer to Accenture's Counterclaims using the CM/ECF system which will automatically send email notifications of such filing to the following attorneys of record:

James H. Bicks
Benjamin H. Diessel
Sapna W. Palla
Kim E. Rinehart
David R. Roth
Wiggin and Dana LLP
437 Madison Avenue - 35th Floor
New York New York, 10022
Telephone: (203) 363-7622
Fax: (212).551.2888
jbicks@wiggin.com
bdiessel@wiggin.com
spalla@wiggin.com
krinehart@wiggin.com
droth@wiggin.com

Adam M. Abensohn
Manisha M. Sheth
James R. Asperger
Jomaire A. Crawford
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
adamabensohn@quinnemanuel.com
manishasheth@quinnemanuel.com
jomairecrawford@quinnemanuel.com
jimasperger@quinnemanuel.com

By:   /s/ *Edward J. Naughton*